5.41032, People v. Johnson. I've got Ms. Burden. Yes, sir. Are you ready to proceed? I am. Then go right ahead. Good morning, Your Honors. May it please the Court. Opposing counsel. My name is Kelly Burden, and I represent the petitioner, Mr. Granville Johnson, in this case. We're here today because Mr. Johnson's retained counsel, post-conviction counsel, was unreasonable. Before I go into the legal issues before the Court today, I'd like to just give a brief procedural overview because this is a fairly long and somewhat complicated procedural history. Mr. Johnson's first two jury trials, the jury were unable to reach a verdict, and they resulted in mistrials. The State was able to obtain a conviction against Mr. Johnson in his third jury trial. Mr. Johnson, after his direct appeal, hired private counsel to file a post-conviction petition on his behalf. His post-conviction petition counsel in 2014 filed a petition that was summarily dismissed because it raised a procedurally barred claim. After that, Mr. Johnson filed a motion to reconsider, alleging that his post-conviction counsel was unreasonable or ineffective in 2014. That made its way all the way up to the Illinois Supreme Court in 2018, where the Illinois Supreme Court, as a matter of first impression, determined for the first time that a petitioner at the first stage of a post-conviction proceeding has the right to reasonable assistance from retained counsel. Since that time, the post-conviction the motion to reconsider the summary dismissal of his post-conviction petition has been bouncing between the appellate courts and the trial courts. There's no dispute that in his motion to reconsider, Mr. Johnson has raised a meritorious claim that his appellate counsel was ineffective for failing to raise a 431B violation or a zero claim. The Fourth District Appellate Court determined that this claim was meritorious and went so far as to say that it was plain error for appellate counsel not to raise this claim. The Fourth District jury trial was closely balanced. On remand to the Fourth District, I'm sorry, from the Fourth District to the trial court, the trial court committed several errors, each of which provide a basis for this court to remand the amended post-conviction petition in this case for further second stage proceedings. The first error I'd like to discuss is a 90-day violation. It's clear that when the trial court had the petition remanded or the motion to remand it down to the trial court stage, the trial court granted Mr. Johnson leave to amend the petition and advance the petition to the second stage. The trial court let the petition languish for two years and then changed its mind, reversed course, brought it back to the first stage and dismissed the petition some two years later after having received input from the State and without ever ruling on the merits of the amended petition. This is a clear and simple 90-day violation. The State's arguments in response are contrary to the complications the trial court had in understanding the mandate that this 90-day violation is somehow excused. But there's no case law to support that. It is a mandatory 90-day term that the trial court has to rule on the petition. The State's other argument with respect to the 90-day violation is that the circuit court's order was void. And that is just incorrect. The circuit court did not act outside this mandate in issuing this order. There's a difference between an erroneous order, avoidable order, and an order that is made which the circuit court did not have the jurisdiction. The remand clearly gave the circuit court the authority to look at the petition, look at the filings, grant leave to amend and advance it to the second stage. So the order is not void. And the violation, the trial court's failure to comply with the act, warrants reversal and remand for second stage proceedings. Let me ask you, why is the 90 days, I'm trying to get my thoughts straight on this. With regard to the 90-day and the void nature of the order, that the State says the order was void, and so the 90 days doesn't apply. What is it that makes it void in the State's argument, as you see it? Okay. Well, the State is essentially arguing that the trial court didn't have the authority to advance the petition to the second stage or allow amendments until it made the determination about whether or not the post-conviction counsel was aware of the 431B claim. But that is incorrect. Because if you read the order, the order was, it was remanded, it gave broad discretion to the trial court in how it was to determine, make this determination, and that once it made a determination, it could allow Mr. Johnson, I'm sorry, if the trial court determined that counsel knew of the claim, then the court should allow amendment. In the mandate, though, from the Fourth District, what exactly was there that gave the impression that the trial court was to go outside the cold record? In other words, what gave it authority, if you will, to have an adventure hearing in a first stage proceeding? I think the trial court had broad discretion to... How so? And what language in the mandate gave it broad discretion to have a whole evidentiary type hearings as opposed to review the record and review the pleadings? Well, I submit that because the mandate didn't specify how the court was to do it, the court could do it from the cold record. But the court certainly could have also conducted factual findings. But that isn't usually what happens in a first stage hearing, though. In a first stage? Well, first stage... So, I guess my underlying question is, if the mandate had, or if the Fourth District had intended for the trial court to hold an evidentiary hearing in that first stage, wouldn't they have clearly stated so in their mandate? I think that because... I think that... I think that that is our alternative argument, that the trial court should have conducted an evidentiary hearing. But I think initially, I think because the mandate did not specify how the trial court was to make this determination, it certainly could make the determination based on the cold record. And it certainly... It had... There was nothing in the mandate that specified. So when... Unless it was not... It was not conflicting with the mandate. There have been instances at the first stage, it's sort of a difficult time to determine unreasonable assistance, because at the second... I'm sorry, whether counsel is reasonable. Because at the second and third stage, you have hearings where you have the actions and the words of counsel. So certainly, the court could look at pleadings and the cold record as it did, but it also would not have been outside of the mandate if the court had accepted a statement from Mr. Johnson or had accepted a statement from post-conviction counsel, which you remember if you're aware of this claim. It's not an evidentiary hearing. Trial courts do that all the time when they're ruling on fee petitions. They have the discretion to make findings. But regardless, the trial court's finding on this record that post-conviction counsel was unaware of this claim is just unsupported by the record. There's nothing in the record to support this. There's no statement from post-conviction counsel. In fact, there's a statement from Mr. Johnson that says he did tell his counsel about this claim. Additionally, we have to look to the actions of post-conviction counsel here, and the court should have looked at it. In the post-conviction petition, he raised a barred claim. He asked for leave to file an amended petition and add additional claims, which shows that he knew of additional claims. More importantly to the issue of his unreasonableness, it shows he didn't understand. I see my time is up. That most importantly, that post-conviction counsel didn't understand the act and that by asking for leave to amend in the first petition to add additional claims, which we must assume as an officer of the court, when he signed the pleadings, he believed these claims to be meritorious. He didn't understand the post-conviction proceedings. He didn't understand because he filed a barred claim, and he asked for leave to file additional claims. So based on that, in the absence of a statement that he knew of the claim, it was error for the court to conclude that post-conviction counsel was unaware of the claim. So for both of these reasons, this court should remand for second-stage proceedings because the evidence here shows that post-conviction counsel was unreasonable, and Mr. Johnson, he was unreasonable for multiple reasons. So the finding that essentially that he was reasonable and that he was unaware of the claim is just unsupported by the record. I have one. Can you point anywhere in the record pre-2018 in the record where there's any indication that the retained post-conviction counsel actually knew about the Rule 43-1B claim? There is nothing in the record pre-2018 that shows that. But prior to 2018, Mr. Johnson's right to reasonable assistance was not even recognized. It is unreasonable and unrealistic to expect that he would have known at that moment he needed to list every single claim that he had spoken to his counsel about. Additionally, his first petition filed in 2004, immediately after it was summarily dismissed, specifically stated that his list in that motion was not exhausted. So this, to hold that against him when he had no opportunity or reason to believe that he needed to list all his claims, he didn't even realize he had the right to reasonable assistance at that time. That just is unfair and also doesn't really go to the heart of the issue, which is can we look at what this post-convictional post-position counsel did for Mr. Johnson and say that he was reasonable? I do see my time is up, but I have one additional point I'd like to make. If we look at the Illinois Supreme Court's ruling where it first determined that Mr. Johnson has the right to reasonable assistance at the first stage, the whole point of that is that so meritorious claims are not lost. When the Illinois Supreme Court was considering that, it made a finding on whether or not that right existed. Then it offered guidance to the court below on how to ascertain. If you read the Illinois Supreme Court's decision, it's clear in the mandate there that to remand to determine whether or not the claims are meritorious, and in this case, if the claims were meritorious and counsel had not included them, he certainly would have been unreasonable. That is a floor for what unreasonable assistance is. It's not a ceiling. So the lower court and this court can say, well, what if perhaps the circuit court could not have made a determination? I can't tell on this record. I can't tell whether or not he knew of this claim. I can't get in touch with this counsel. Mr. Johnson doesn't remember. The circuit court had the authority, as this court does, to look at the record and say, this post-conviction counsel raised a claim that was barred. It was a repackaged claim from direct appeal. And it was procedurally barred. It could have possibly been overcome if he had raised ineffective assistance of appellate counsel, but the record shows he told Mr. Johnson that was not necessary. So the lower court, regardless of the knowledge of post-conviction counsel, there's nothing that would have been inconsistent for the court to determine that post-conviction counsel was unreasonable, because the mandate was for it to determine if counsel had the knowledge. And if counsel had that knowledge, we know beyond a shadow of a doubt that is unreasonable. But that doesn't mean that's the only way that counsel could be unreasonable. So for these reasons, this court should find that his post-conviction counsel was unreasonable because he lost a meritorious claim that was spread of the record, which is at the first stage is also, you know, it's not a claim that we're saying post-conviction counsel should have known and gone out and investigated everything and talked to every person and things like that. A lot of that, basing on what the counsel knows, comes from claims that are outside of the record that he would only know from his client. This is a claim, a 431B claim, that if you opened up and read the trial record, you would see it. So this is a very – this decision can be cited on very narrow grounds that post-conviction counsel who filed a claim that was not meritorious missed a fully meritorious claim that required no outside research. It required nothing more than reading the record. On this record, post-conviction counsel was unreasonable. And if the court finds that the alternative argument here is that it's – I'm going to stop you there. Okay. But obviously, you'll have your time for a rebuttal. Yes. And we can talk about your alternative. Okay. Thank you. We've let you go backwards. This is a procedural nightmare with this and with how it was proceeded through the courts and then into once it got back to the circuit court. So do you have any questions, Judge Hackett? Let me wait. You'll have some more time. We'll see what the gentleman has to say here. Good morning, Your Honors. May it please the Court. My name is Nicholas Atwood, and I represent the people of the State of Illinois in this matter. I agree with Your Honor, this was a procedural nightmare. So I'm going to try to do my best to cut straight to the quick. The issue in this case is about whether the trial court complied with a very narrow mandate. That mandate was a remand to determine two things. One, was there an underlying meritorious claim for the reasonableness test? And two, was defendants retaining counsel actually aware of that claim and refused to raise that claim? That is what the mandate required. We know that the court was limited to how it could consider that claim because both in the 2018 Supreme Court case and also in the 2020 Fourth District case, it was remanded back for further first-stage proceedings. This is not proceedings on a petition. The petition in both cases has already been dismissed. This is a proceeding on a motion to reconsider raising this claim of unreasonable assistance. This motion is not owed the deference of a typical first-state petition. We're not taking all the facts and allegations as true. We're not looking at this, you know, for the gist of a claim. The trial court was vested with explicit discretion to look at this cold record and make a determination. And so the question becomes, what are they allowed to consider? There was an explicit instruction in 2018, Johnson, and in 2020 that there will be no evidentiary hearing. This is first stage. In People v. Custer, the Stilwell Supreme Court declined to extend Johnson. They said at first stage there are no hearings, there is no presentation of evidence, there is no argument. The court knew this when it remanded it to the trial court for a factual determination. So then what was the court allowed to consider? In Custer, they tried to expand that reasonableness test to include a crankle-type inquiry, a Q&A, the least you can do to explore a claim, a simple Q&A, not sworn witnesses, no evidence, nothing else. They didn't expand it. They said that's not what's happening here. And the reason they didn't expand that is because the distinction between retained counsel and pro se counsel or pro se representation at the first stage. At the first stage with retained counsel, defendant is not allowed to do an end run around his counsel's representation in order to present a claim that he believes has merit. That is why the Johnson court said he must have been actually aware and refused. And so this sort of gets to this question about a meritorious claim is not going to survive. That was the Williams case out of this court. But there is an important distinction between Williams and this case. In Williams, the claim was raised in the petition, but it was not supported. It was an expert evidence that they wanted to rebut a claim from the trial court, and they were alleging that it should have been included. But the post-conviction counsel didn't attach an affidavit. He didn't attach an expert report. It didn't really explain what was going to be in that report that would change the results on a remand. And so the problem there was that claim is now subject to res judicata. In this case, it is not already raised in the initial claim, and there is an avenue available to this defendant, and it's the cause and prejudice test in a motion for a lead to file a successive post-conviction petition. So it adds to the procedural nightmare because where we're reviewing right now, that's not what's going on. So the correct procedure for this court is to affirm that dismissal at the trial court. Now the defendant can allege cause and prejudice because my retained counsel did not raise a meritorious claim, and I was prejudiced by his failure to do so, and it comes under the context of ineffective assistance. That's cause and prejudice. Typically, you wouldn't see cause and prejudice on an unreasonableness claim, but all the case law deals with second stage or later. The cause here is a defendant cannot do an end run around his retained counsel. He cannot raise the claim. So counsel's refusal to raise that claim is the cause that prevented him from raising it, and the prejudice is whether or not it's meritorious. That differs from a pro se context when counsel gets appointed at the second stage and he's fixing claims, he's making them, he's supporting them under Rule 651 and doing that. So the distinction here is this very narrow situation where you have a retained counsel and the defendant has no avenue around his retained counsel. So the court had to look at the cold record, and I submit to you, if we are not in a first stage petition discussion, which is what the statute refers to, that's why the 90-day rule doesn't apply. I'll get to that in a second. The statute considers a petition. This was not a petition. It was a motion to reconsider. The petition was already dismissed. And so the court has been given some additional modicum of discretion, and that is it can look at a cold record and now it can make inferences or speculate, whereas it could not in a petition because a petition must be taken as true. That is the distinction. These new motion to reconsider does not need to be taken as true. You don't owe any additional deference. So then the court looked at the cold record, and what did it see? It saw some vague references to potential other meritorious claims, but no reference whatsoever to Rule 431B until after the 2018 Illinois Supreme Court ruling when it's obvious the court could infer that the defendant was represented by counsel on appeal. It went up to Illinois Supreme Court. Counsel would have reviewed that record and said, hey, you got a meritorious 431B claim. You need to raise that in postconviction. There's no evidence any time before that that he ever considered raising it, and the record shows he actually raised numerous claims that he supported with case law, citation of the record, and arguments. These weren't unsophisticated petitions, and so the court looked at that, and it exercised discretion that was given to it under the 2018 Johnson ruling to make the determination, and that's why the court was ultimately proper in dismissing it. Do you honest have any questions about that? Does that make sense? You have to look at this case. What doesn't it say to figure out what it does say, and how do these exterior rules apply? Because I'll be frank, in the 2018 Johnson case, they didn't spell out what you're allowed to do. But I think if we look at it, it's after a dismissal, but it's still at first stage. It's expressed. There's no hearing. There's no argument. There's no evidence. The only thing left is the discretion of the court to make an inference or speculate. Defendant has asked the court to do the same thing, just disagrees with the trial court's conclusion. The defense asks, look at these vague references to meritorious claims that were talked about being raised that were never raised, and it asks you to find that that supports that they were going to raise this meritorious claim and that they had actual knowledge, and yet somehow refused. So I think that's what's happening in this case. Moving into the second issue, the 90-day rule doesn't, certainly. Okay. That's what I was going to ask. You said you were going to get back to that, so you just were. Yes, sir. Thank you. With the 90-day rule, the statute, it's plain language of the statute. 5-122-2.1 says the petition. The petition in this case was already dismissed. So that 90-day rule that is a part of that statute only applies to a petition, not to a motion to reconsider. And so the court had no, was not governed whatsoever by the 90-day rule. So the court made some errors, I kind of think initially because it didn't know how to react to the mandate and what it was supposed to do. And so the court thought that it needed to have a hearing, an evidentiary hearing. And so it advanced this matter without ever doing the thing that it was actually told to do, which was make a first-stage determination, was he aware and did he refuse? It just sent it on because it mistakenly believed it needed to hold a hearing. But we know from Custer and from Johnson's 2018, you cannot have a hearing on this issue. So that was completely incorrect. But then the court realized that after it advanced to second stage and the State filed a motion to dismiss. And in that motion to dismiss, before dealing with any of the substance of the claim, the State pointed out, hey, you exceeded your authority provided to you by the mandate. And that does not give you jurisdiction to make a ruling such as you did. And that's why it was acceptable for the court to remand it back down. Any ruling the court made was void for lack of jurisdiction. The mandate was crystal clear. First stage, make a factual determination knowing all the rules and procedures that go into the first stage. And then it goes from there. The court never did that. So every order was void ab initio because the rules are very clear. You have a limited mandate that tells you to do a specific task. You do not have the authority to exceed that mandate. That loses your jurisdiction. And so the court recognized this. It then sent it back to first stage, which it is allowed to do because it was not a dismissal as a final order. An advancement of a petition or a cause or a motion from first to second stage is interlocutory in nature. And the court retains authority to reconsider. One of the cases the defendant talked about, I do want to address quickly with the I think it was Clemens. I'm sorry. I gave counsel a little extra time. So I'll give you, you know. I appreciate that. I'll try to do that within reason. One of the cases counsel cited was the Clemens case. And it was dealing with the fact that it was a civil matter. And it was remanding back for, like, additional hearings and things of that nature. But to the extent that any civil case is going to conflict with a post-conviction hearing act, the post-conviction hearing act has been controlled. And I recognize that that's a civil act. But it's clearly not governed by the typical rules of civil procedure. It has its own procedures built in. All of the other cases that the parties have cited outside of the 2018 Johnson case and the 2020 4th District Appellate Court Johnson case have all been remands for hearings at second or third stage, which we know are appropriate. So we have to look at this, as counsel mentioned, in a narrow fashion. What governs this case is what's in those mandates. Because this is a very unique issue. I cannot find a similar situation beyond Williams, which we've distinguished in the ways that we've distinguished the Williams case out of this court. So we have to just kind of look at it and say, did the court comply with that mandate? And although they took a circuitous route to get there, they ultimately did comply with the mandate. And the steps they took to get there and get back to first stage and then make that ruling were all proper under the law. And so what this court needs to do then, I believe, is to affirm the dismissal of the petition because the court complied with the mandate. It determined whether or not counsel was actually aware and refused. And he said counsel was not actually aware because the defendant didn't raise this claim. And that was an appropriate inference that was made by the trial court. And the defendant, unlike Williams, is not completely foreclosed in trying to raise this claim and can ultimately still get an evidentiary hearing on it. That's sort of the second aspect of this, that the procedural nature of this. We're just not in the right place for him to get a hearing. But he is not foreclosed because he can file that motion for leave to file a successive petition. He can show a cause and prejudice because we're not disputing 431 being claimed as meritorious. It is. And I think even one of the previous appellate courts already determined the evidence was closely balanced. That's not before this court. That's something that can happen at a third stage hearing. So he can show cause because his retained counsel, who he could not end around and raise claims independently of, which is different from a normal pro se, he'll have an opportunity to advance it. And so at first stage, we'll take those allegations as true. He can put it in an affidavit and his claim, boom, just of a constitutional claim. It'll get satisfied cause and prejudice. It'll go to second stage. Now we have to look, is it positively rebutted by the record? It's not because we had to make inferences to get here in the first place. So then it's going to go to third stage evidentiary hearing. He can testify. Defense counsel can testify. That's what has to happen in this case. But it does not prevent the important thing I'll close on. This defendant is not foreclosed from raising a potentially meritorious claim on a legal technicality. That does not exist under these facts. And if Your Honor has any further questions. Can you give me your thoughts on the clarification? Attorney Wood. That's me. Right. Attorney Burden had said in regard to the trial court advancing to the second stage and then rescinding that order. There's a question of void. Voidable. Do you have any thoughts or comments on that? I believe that specifically it is void. Because the mandate was clear. First stage, it mandated the first stage and then make the determination. The court never made a determination. It advanced to a subsequent stage because it believed incorrectly that it needed to hold an evidentiary hearing to make that determination. Which it said, I think it said it was puzzling initially in its order because it didn't understand what it was supposed to do. So it mistakenly advanced the petition, not on the merits, but because it thought procedurally it needed to hold a hearing. And it knew it couldn't do that at first stage. And so then that was void because that exceeded the jurisdiction because the court said figure it out at first stage. And if he was actually aware, then you can advance it on. But that's not what the court did. And so the court thought it needed to hold a hearing. It wasn't authorized to hold an evidentiary hearing. It was authorized to make that determination and then take next steps. And so because that exceeded the mandate, it was a very clear mandate. First stage, and we know can't have a hearing, can't do this. So it kind of got its cart before the horse in that regard. And that's what exceeded the mandate. Because it exceeded the mandate, that's void. It did not have jurisdiction to make that advancement. Having said all that, can you see why the trial court might have been a little dismayed at the job before it? Absolutely, because it didn't feel like it had enough guidance. Because it was a case of first impression when it went up to Johnson in the Illinois Supreme Court. And then it did not really define what the court was supposed to do. So the court, you know, didn't look at Custer, I guess. It didn't look at, you know, yeah, it didn't look at Custer and couldn't. And that's what I get to is you have to look at what you can't do to figure out what you can do. There wasn't a clear road map for the trial court to say, okay, I'm back here at first stage. This court has vested me with discretion to look at a cold record. Because normally I would not be able to use discretion. I would have to take all this stuff as true. So it was a very convoluted procedural mess. I think the court ultimately got it right. It was circuitous, but it corrected itself when it sent it back to first stage and fully complied with that mandate. Thank you. Anything else? With that, Your Honors, I would ask that you affirm the first stage dismissal. Thank you. Thank you. I just want to address a couple of points that counsel made. And I want to touch on his argument that the order is void. The circuit court had jurisdiction to allow Mr. Johnson to amend the petition and advance it to the second stage. There is nothing in the mandate that says the circuit court needs to make these findings and put them on the record or anything like that. The circuit court had the authority to. It said if the court finds that counsel knew of the claim, then Mr. Johnson shall be permitted to amend, should be permitted to amend his position and proceed to the second stage. But did they make that determination before they allowed any of that? I mean, did they make the determination that he knew of it? Your question raises a really interesting point. Because counsel spent so much time talking about how this could have been made off the cold record. The court certainly could have made that determination and then advanced it to the second stage. But the argument that if the court did, just because the court found, the mandate was if the court found that counsel knew of the claim. So that's step one. Yes, step one. Because it was already been determined meritorious. If he found it, then he should let him amend. It didn't say anything about what to do if he found he didn't, we weren't sure if he knew of the claim or he didn't. It did not say that. This is, we are there for a motion to reconsider. Correct. We're there for a motion to amend to determine counsel's unreasonableness. This is why it went up to the Illinois Supreme Court. And it has been since 2018 trying to determine whether or not this counsel was unreasonable. By saying that he has a valid claim to bring this as a successive post-conviction petition, counsel is acknowledging that his post-conviction counsel was unreasonable at the first stage. He should have the opportunity to amend his petition. The order was not void. The cases, if you look at the cases, the State Cites in the Brief, Fleming, that's a case where the court retained jurisdiction, remanded to the trial court so that they could conduct a BATS analysis. And then the appellate court retained jurisdiction and said, once you conduct that analysis, we're going to rule whether or not a new trial is necessary. Well, the trial court went ahead and made the analysis and then made the determination on the new trial. That was in direct conflict with the specific order. Also, they rely on daily. That's a case where the appellate court remanded for resentencing. And there the trial court said, I'm not going to resentence. I'm going to grant you a trial. That is, that court left the authority to do that. In Brown, the Illinois Supreme Court, which is another case they rely on, vacated the trial court's order, finding the State statute unconstitutional, and remanded for a specific directive. And when it was remanded there, the trial court said it wouldn't be in the best interest of justice to follow that. So the circuit court did something. It failed to do what it was directed to do. In this court, just because this case, just because the State didn't agree with the court's ruling, the court could have made the decision and did not need to make factual findings, so it had the authority to move it to the second stage. It was the ultimate issue that we're here for is to determine whether or not post-conviction counsel is unreasonable. That's why the Illinois Supreme Court remanded it. This claim, the 43B1 claim, was never in front of the Illinois Supreme Court. The lower court allowed them to supplement the motion. We, the mandate of the court, once it made a determination about the knowledge, there's nothing in there that prohibited the court from finding post-conviction counsel unreasonable for failings at this claim. And with respect to ‑‑ I see my time is almost up. I just want to make one more point. With respect to calling this an end run around his counsel, that is not an accurate representation. If you read the Illinois Supreme Court decision in 2018, it's all about how a petitioner at the first stage shouldn't be in a worse position because they hired an incompetent counsel that waives all their claims by not raising them. This is not an end run around his attorney. This is a clear case of unreasonable assistance where he raised a barred claim that was repackaged on his post-conviction petition that was raised on direct appeal, and he missed a meritorious claim that everybody agrees is a constitutional violation that goes to the heart of a jury trial in a case where it took the state three attempts to convict him. This is a valid constitutional violation. It was missed by a post-conviction counsel at a time when he didn't even know, Mr. Johnson didn't even know he had the right to reasonable assistance. This is, as much as it's a convoluted procedure on the things that went on, it's clear cut. The counsel was unreasonable, and it's been pending since 2018 to determine whether or not this counsel is unreasonable. For these reasons, this court and the order is not void. So if the court does not want to find that the trial court erred on the unreasonable misfinding, it's a clear 90-day violation. The court had the authority to advance it. It's in the mandate, and it did it just because the state didn't like how it did it. Okay, let's go back to that, though. With regard to the first and second step of the mandate, the first step of it, and correct me where I'm wrong. I'm sure you'll find that I'm wrong on something I'm about to say. The trial court was required to first determine if there was a problem. If it did, then it could advance it to the second stage to get evidence in that regard. But when the mandate was silent on what would happen if it did not, then how do you go to the second stage? There's nothing to say. Because if they could go to the second stage with finding or without finding that there was a problem, why have that language that says the first step is to? Well, I think when you read the 2018 opinion of the Illinois Supreme Court and you realize what the 4th District was trying to do, they were trying to follow the mandate of the Illinois Appellate Court. That's clear. And you're correct that the first instance was, okay, whether or not the claim is meritorious. That was decided, and it was meritorious. And then they went back to determine whether or not counsel knew of this claim. The Illinois Supreme Court also, when you read their opinion in the paragraph, I can cite the paragraph and not have it in front of me, but it says that if counsel, because that was what they were taking Mr. Johnson's motion to reconsider, is that he had told them about all these claims and didn't include them. So it was remanded so it could rule on the substance of his motion to reconsider. When it was remanded, he added additional claims. When the court, when it was remanded back, it's important to note that the Illinois Supreme Court never said that this is the only way a post-conviction counsel can be unreasonable at the first stage. They're saying, yes, okay, we're going to declare this. Post-conviction counsel can be unreasonable at the first stage. You do have that right. And, yeah, if they lose these meritorious claims and they don't raise them when the client wants them, and the client's in a worse position, that's unreasonable. So it was setting a floor, a floor. We know that's unreasonable. It wasn't setting the ceiling. Years have evolved since then. We know from Addison and the failure to shape a claim properly and not raise ineffective assistance of appellate counsel is when it would overcome a procedural default. We know that's unreasonable assistance. When it was remanded, the appellate court in the 4th District, not in its mandate, but in the body of its opinion, it misunderstood the 2018 Illinois Supreme Court decision to be that if you don't find that he knows of this, that is the only way he's allowed to proceed. That's not correct. We are talking about Mr. Johnson, it was that if you find that this did happen, then you better let him proceed. Yes. But it wasn't that, oh, if he didn't, that's it. Counsel was reasonable on this record. That doesn't end the inquiry. We know this counsel was unreasonable. And we know Mr. Johnson has a meritorious claim, constitutional claim, to be raised that was waived because he had an incompetent counsel. Counsel's reasonableness, as much as we want to talk about how low the standard is, it can't go below Illinois Supreme Court Rule 1.1, which requires attorneys to have the knowledge and skill to represent someone at the first stage. He did not know that if he did not include a claim, it was going to be waived. He didn't understand that he needed to raise appellate counsel in order to challenge ineffective assistance of trial counsel. We know that his post-condition counsel was unreasonable. And that was the whole crux of the 2018 Illinois Supreme Court decision, was to recognize that right and now for the lower courts to determine whether or not his post-condition counsel was reasonable and that Mr. Johnson should be held to his incompetent counsel's waiver of a meritorious claim. So for these reasons and the reasons in our brief, this Court should reverse and remand for second stage proceedings. Mr. Packard, any questions? One briefly. The attorney for the State makes mention, raises an argument that procedurally this comes from, it should be remembered that procedurally this comes from a motion to reconsider, and that that has significance. How do you view that? The counsel is correct to the extent that in the initial brief, I argued first stage liberal construing. That really does go to the merits of the claim. So I would concede that looking at this, we're looking at it just like you look at any other reasonable assistance claim. But with the eye to reading the Illinois Supreme Court decision that most cases of unreasonable assistance at the first stage are going to involve a claim that his post-conviction counsel lost the meritorious claim, either by not pleading it properly or not including it. Everything in the record here, including the pleading, and the Court, when it was going to rule on the motion to reconsider the dismissal, certainly could look to the pleading. And everything in this pleading tells us that the Court should have, if anything, construed that it was just as likely that this counsel knew of the claim, and it was one of those claims that he asked leave to amend to add later. There is nothing in the record to support the trial court's conclusion. I want to make clear in the argument, I'm not saying that the Court couldn't make a determination based on a cold record. I'm saying that there's nothing in the record to support this counsel was unaware of this claim. If anything, we should presume counsel was aware of the claim because he asked to add another claim. He didn't understand post-conviction law. He raised a barred claim, and he asked for leave to amend in the first petition, not understanding that the claim could be waived if he didn't add it. So the record here, this doesn't support the finding that happened below. So that is another reason why this Court should remand for second stage proceedings, allow the amended petition to go forward. Thank you. All right. Thank you, counsel. We ask that you will take the matter under advisement. We will issue an order in due course.